The next case on the docket is 525-0420 Federal National Mortgage Association v. Walker. Mellon, if you're ready, please step down to the record. Scott Dempsey. Whenever you're ready. If you want to go ahead and start that over and state your name with the mic there. Scott Dempsey. I'm Mellon. May it please the Court, Counsel. The central issue that this Court is being asked to address on this appeal is the effect of a foreclosure in another case in which the mortgagee knows about a known contract purchaser of a piece of real estate, an occupier of land, and intentionally doesn't make them a party in the case, does not name them in an affidavit of unknown owners or unknown claimants, and proceeds with the foreclosure. The issue at this point is whether or not a subsequent purchaser of that property at this point owns the property free and clear of the interest of the contract purchaser. And this comes to the Court within the context of a motion for judgment on the pleadings in which the trial court and this Court is required to accept as true all undisputed facts disclosed by the pleadings. And if there are disputed issues disclosed by the facts, those are not subject to a consideration either by the trial court or by this Court. And we believe that trial court error in finding that the undisputed facts as alleged in the petition, namely the plaintiff's complaint, the answer filed by Defendant Walker, along with the affirmative defense, we believe the trial court erred in finding that there were material issues of disputed fact, but they were not relevant to the trial court's determination in granting judgment on the pleadings in favor of federal national mortgage, which was the subsequent purchaser of the property. The undisputed facts as disclosed by the affirmative defense that was raised by Walker is that there was a mortgage on the property that he purchased from October 7th of 2013. He then entered into an installment contract to purchase the property with the seller, who was also the mortgagor, Paula Jackson, on January 17th of 2018. And I don't think there's any dispute that the terms of the contract that are part of the appellate record that were attached to the affirmative defense and the plaintiff's complaint for declaratory judgment in this case as well established that this is an installment contract for the purchase of the real estate. Walker paid a lump sum payment of $32,800 the time he signed the contract on January 17th, 2018. The contract provides that upon making that payment that Jackson was to sign a deed transferring the property to Walker at that time, and that deed was to be held in trust until Walker paid the balance of the contract at that time. When was that done? Pardon? Was the deed signed and held in trust? There's no facts in the record as that relates to that. That's what the contract says. It's not alleged by federal national that that was or was not done. And, again, I don't think that's a fact that's on the record. The only thing that is in the record is the plain terms of the contract that required Jackson to sign the deed. And it says specifically the seller agrees for the $32,800 payment that is alleged by Mr. Walker that was made. Again, it's not disputed in the record that that payment was in fact made. If the court reviews the answer to the affirmative defense filed by federal national for essentially every single allegation of affirmative defense, federal national claims they have no knowledge about that. So they don't deny those allegations. But the plain terms of the contract that, again, are attached to federal national's complaint as well as the affirmative defense states that in consideration for that payment, a deed for the property will be left in trust with the buyer's attorney for delivery to the buyer at the time of the final closing and when the final balance of the payment is to be made. The sales contract was never filed with the county clerk's office in the county, correct? That is correct, Your Honor. So if that's not on file, how then would the plaintiff have, quote, unquote, noticed that there is this existing contract out there? Well, again, the allegations in the affirmative defense are that the same day that Walker signed the contract, made the payment, he then contacts NationStar, doing business as Mr. Cooper, notifies NationStar, who is the mortgagee, I bought this property on contract. And the contract further provides that Walker is to be added to Jackson's mortgage account so that he can make the payments, the installment payments on the outstanding balance. And it says specifically the seller, which is Jackson, will add the buyer to the outstanding mortgage as an authorized user, will also request the mortgage assumption paperwork so the buyer can assume the mortgage. But it's alleged in the affirmative defense that the same day he signs the contract, Walker then calls NationStar and says, I bought this property. I'm supposed to be added to this account and has a conversation with NationStar. That's how they are advised. It's not through the recording of the contract, which, again, was to Mr. Walker's detriment. But NationStar, Mr. Cooper was put on actual notice that Mr. Walker was not only a purchaser of the property, he was an occupant of the property as well. And I think that is the similarity between this case and the Applegate case that we have cited in our brief. And I think this case is virtually on point with the Applegate case, although that involved a lease, not a purchase through an installment contract. There was no recording of the lease in Applegate. The Applegate lease was recorded after the mortgage on the underlying property had already been taken out by the mortgagor. Again, the lease was not recorded, and the court in Applegate made it clear that the mortgagee knew about the fact that the coin-operated laundry was occupying the property pursuant to a lease, and that the lender knew that they were occupying the property, knew that they had a right to possession of the property, and they knew that they should have been added to the foreclosure complaint if they wanted to terminate the lessee's interest in the property, that they filed an affidavit in that case as to unknown owners, non-record claimants that was not true because the mortgagee knew that the coin-operated laundry in that case was an occupier of the land, knew that they had a lease for the property, and by filing a false affidavit in the mortgage foreclosure case, that the court in the foreclosure did not obtain jurisdiction over the lessee, and therefore the judgment foreclosure did not terminate the lease agreement and therefore foreclosed any sort of lease agreement that they had with the original owner of the property whose interest was foreclosed in that case. Was there any evidence with regard to Mr. Cooper, the mortgage holder, did they accept payments from Mr. Walker from his account? I believe the allegations in front of the defense are that they accepted payments. The allegations are he was added as an authorized user and they subsequently began making the mortgage payments thereafter. Was there any kind of testimony with regard to property insurance? Mortgage companies typically require a mortgagee to have insurance on the property. Was there any testimony with regard to that? Who was holding it after Walker bought it? Did he insure the property in his name and provide a copy of that to the mortgage holder? Your Honor, this was a judgment on the pleading, so there's been no testimony or evidence thus far. Again, these are all legitimate factual disputes that could be raised by a federal national in the case. There's nothing in the pleadings about any of that. Correct. There's nothing in the pleadings one way or the other. Again, I think the federal national is asking the trial court to make some multiple logical conclusions in its favor when the standard for judging whether or not a motion for judgment on the pleadings should be entered is that the opposing party to the motion is the one who should benefit by any sort of logical conclusions in this case. But again, we haven't gotten beyond merely a judgment on the pleadings, and so I think the trial court and this court also as well in this de novo review is bound by whatever is in the pleadings. If the federal national believed that that was a significant fact, they could have alleged that Walker did insure the property or that he wasn't paying the taxes on the property. Again, at this point, we don't know if the mortgage payment included an escrow for the taxes and insurance in this case, and therefore they were being paid on a regular basis. I was just asking that based on whether or not that would provide further evidence to the court that Fannie Mae through Mr. Cooper was aware that there was somebody else out there, especially when Mr. Cooper in his pleadings or in the foreclosure stated that there was no non-recorded owners. I think those are all legitimate factual disputes. I mean, at this point, the only facts before the trial court and this court are that Mr. Walker says that on January 18, 2018, when he signed the contract, he merely called Mr. Cooper and they added him to the paperwork to be able to make the payments. He subsequently began making the payments on the mortgage. Again, Mr. Cooper, if we get beyond judgment on the pleadings, Mr. Cooper may be able to present testimony or the federal national may be able to bring witnesses in to say that, no, that's not true. We have no record of Mr. Walker making that call or that, yeah, Mr. Walker was added to the mortgage account. We knew that he was an authorized user on that account. We knew he was a possessor of the real estate. Those are legitimate factual disputes, but, again, we've got to get beyond a judgment on the pleadings for the trial court to be able to make those sort of legitimate factual determinations as part of the complaint for declaratory judgment. You would agree that page 7, when you're quoting from the eviction, the answer to the eviction complaint, the seller is referred to as Paula Walker, not Paula Jackson. So there's no relationship between the seller and the buyer? No, that's simply a typographical error that I apologize for that. If Paula Jackson is the named seller in the complaint, that's just a typographical error. But, again, I think there's no dispute under the Illinois law that as a contract purchaser, that Mr. Walker became the equitable owner of the property the moment that he signed that contract, made the payment of $32,800 to Jackson. And as further proof of the fact that he became the equitable owner of the property is the fact that the contract provides that Jackson is to sign a deed that's going to be held in trust until the final payment is going to be made. So there's evidence in the record that there was an actual transfer of the ownership interest in the property at that point. The deed could not be recorded at that point because Mr. Walker had not yet made the final payment. But I think it's clear, as indicated by the Shea v. Penrose case, that the Illinois Supreme Court has held that a contract purchaser of a piece of property becomes the equitable owner of the property, especially if they take possession of the property the moment they sign the contract. And Federal National has gone to great lengths to try to claim that that's not consistent with what Illinois law is on that issue. But I don't think they've cited any cases to say that that is not still the law in the State of Illinois, that a contract purchaser becomes the equitable owner of the property. And as an equitable owner that had advised Mr. Cooper of the fact that he was an owner of the property, he was entitled to certain rights. And I think the starting point for determining what Mr. Walker's rights were is Section 1501 of the Illinois Mortgage Foreclosure Act, which talks about what permissible and non-permissible parties are. Clearly, Mr. Walker, as an equitable owner, a non-record owner, not someone on the note, is a permissible party. He's not a necessary party to the mortgage foreclosure case. He didn't have to be added by Mr. Cooper to the mortgage foreclosure case. But by not adding him and knowing that he is a contract purchaser and occupier of the property, Mr. Cooper does it at their own risk. Because Section 1501 makes it clear that the court can adjudicate the interests of non-necessary parties. Non-necessary parties or permissible parties include all persons who have a possessory interest in the mortgage real estate. So it's not even necessary for someone to have an ownership interest in the property. You could have someone like Applegate, where it's simply a let-see of the property, to have a possessory interest in the property. But the ramifications of not naming someone who is a permissible party who has a possessory interest in the property is set out very clearly in Section 1501, where it says that any disposition of the mortgage real estate will be subject to the interests of a person who has not made a party to this case. That's exactly what happened in this case. And Mr. Cooper knew that Walker was an owner, possessor of the property. They chose not to name him. They filed a false affidavit stating that they didn't know that there were any non-record claimants or unknown owners of the property received at the foreclosure. And then when Federal National subsequently bought the property at the foreclosure sale, they purchased the property. But it's clearly subject to Walker's interest in the property as an equitable owner, and his equitable interest in the property has not been terminated at this point.  No questions?  No questions? Okay.   You're out of time. I'm going to reply. Okay.   Good morning, Honors, and may it please the Court. My name is Alexander Wright. I'm here today representing the appellee and the plaintiff in the underlying lawsuit, Federal National Mortgage Association, commonly referred to as Fannie Mae. I think the primary issue that we're working with here is whether Mr. Walker ever obtained an ownership interest in the property. Despite what Mr. Walker has presented, it is our position that contracts simply don't transfer title to properties in the State of Illinois. Faced with this reality, Mr. Walker has sided to general equitable considerations and has argued that equitable conversion gave him a right in the property. But that's not what the Illinois case law states. Under Jackson v. CBR-Jackson partnership, the Court made clear that a contract to sell an interest in realty does not result in the transfer of title, but is merely an executory agreement that will result in the transfer of title once performance of the contract is completed. The key takeaway from this is that while a purchaser, in this case Mr. Walker, may have a right to enforce the contract, he or she has no interest in the property, either equitable or legal, under that contract. So on the face of the pleadings, it is clear that Walker did not have an interest in the property. He acknowledges that he never received a deed, and the pleadings acknowledge that the contract was never completed. If we take a look at the sales contract, the purchase price of the contract was calculated based on a desired profit, which is the $32,000 that Mr. Walker claims that he paid. For the purposes of the underlying motion, we have to accept that as true. But in addition to that, it also includes the estimated loan payoff of approximately $148,000. The contract further specifies that the mortgage was to be either paid or assumed by Mr. Walker. That was one of the conditions to the sales contract, and we know from the public record that that did not occur. The mortgage was foreclosed. The contract also provided Mr. Walker with the right to terminate the contract and to obtain a return of the original payment. We don't know if that happened, but all of these put together explain to us that this contract was never completed. There was no closing. That was admitted. Mr. Walker never obtained a deed, and that was admitted in paragraph 27 of the answer. Isn't this more about whether or not your client had actual notice, more specifically if Mr. Cooper ever had actual notice of the defendant's taking over the property or ownership interest in the property at the time the foreclosure was filed? Because my reading of the briefs tells me that we've got the biggest issue is that, you know, as counsel continued to remind me, this is a ruling on the pleadings. And in the pleadings, the defendant did plead that he notified Mr. Cooper immediately upon, after the sales contract was signed, that he had an ownership interest. So when Cooper, or I suppose Fannie Mae, now alleges that there were no other known owners of records, isn't the actual notice a problem for your client? I think, no, I don't think it is. And I think there are a couple of points to get into there. First, I want to make sure that we understand the distinction between the plaintiff in this case, which is Fannie Mae, and the plaintiff in the foreclosure, Mr. Cooper. Separate entities. Right. So what Mr. Cooper might have known in a separate case, I don't believe is properly before this court or before the trial court, because we have a judgment of foreclosure and an order approving sale that adjudicates those issues. We have a judgment that says all unknown owners of non-recorded claimants were provided with adequate notice and any interest are therefore closed. And under Applegate, though, if there was a false statement by Mr. Cooper stating that he was unaware, they were unaware of any outside ownership interest, when in fact it was actual notice, it's a void order. So you can attack. I'm not sure that I agree with that. There are a couple of points. First, I think it is important to go through the analysis of whether an ownership interest was actually obtained. Mr. Walker alleges that he made payments. Even if we accept that as true, that doesn't give an ownership interest. I can make payments for someone else's mortgage. That doesn't give me an ownership interest in the property. Even if, for argument's sake, Mr. Walker could establish that he provided NationStar or Mr. Cooper with a copy of the sales contract, the sales contract, there's no evidence that it was completed. There are no allegations that it was completed. And we know it wasn't completed because had it been completed, the mortgage would have been paid off or assumed, and neither of those occurred. So that first step is where I think the analysis starts to fall apart. There was no ownership interest. So Mr. Cooper could not have been aware of a fact that didn't exist. And Mr. Cooper could have been aware that there was the sales contract, which could have ultimately awarded Mr. Walker some kind of ownership interest. But the contract itself, under Illinois law, did not grant him an interest. And even some of the cases cited by Mr. Walker I think support that very position. If we look at the Hinsdale case, which they rely on, I think first it's important to notice that that case is distinguishable because in Hinsdale the contract purchaser's equitable interest accrued before the mortgage. Here, this mortgage is reported approximately five years before the sales contract was entered into. But even in that case, the court discusses the party fulfilling the obligations under the contract being entitled to equitable conversion. The contract was not completed here. And, again, that is acknowledged based on the face of the pleadings. There was no deed given to Mr. Walker. So even the cases that support equitable conversion don't apply to the facts before this court. And even if there were equitable conversion, that doesn't give the contract purchaser superior rights to a prior reported encumbrance. The recording statute, 735 ILCS 5-30, gives priority to the first reported interest, which in this case would have been the mortgagee. So I don't think that Mr. Walker ever established that he had an ownership interest. And, again, Mr. Cooper couldn't have known that he had an ownership interest if he didn't actually have an ownership interest. The second issue, I think, is that Mr. Walker is not challenging the OAS, the order approving sale, in the underlying foreclosure. If he thinks that that was erroneous, that was the avenue to go attack. That court in that case was the appropriate venue for Mr. Walker to attack the order approving sale, not to simply withhold possession of the property and basically say, I don't agree with the order approving sale. At page 13 of your brief in the footnote, you point out the distinction between the applicant case where there was a lease that's not required to be recorded and a real estate sales installment contract that by statute is required to be recorded. And they're claiming an equitable interest just based on that real estate sales contract. But can you claim an equitable interest if you didn't follow the law and record your contract or memorandum? I mean, that seems a little odd. I don't think you should be able to because it sort of undermines. Is there a case that says that? Is there anything that says that you don't have an equitable interest if you didn't record your contract? I am not aware of any such cases. I think the premise makes sense. It would seem problematic for me that you could have an owner of a property who may be facing foreclosure that just says, well, I'll just sell a contract, cash out on my equity, sell the property, cash out on my equity, pursuant to an installment contract, and then no one has to put on notice. I mean, I think that the purpose of that statute is to ensure that the buyer, in this case Mr. Walker's interests, are protected. And as a practical matter, had they recorded the contract as was required under Illinois law, then I have zero doubt that when the foreclosing lender pulled their title report prior to filing foreclosure, they would have seen that interest and the title company would have said, if you want me to issue a title policy, you have to name that individual. And that didn't happen. I also have decided the case, I think you said, I didn't catch the site, but an Illinois Supreme Court case that says a real estate sales contract creates an equitable interest in land. Are you familiar with that case? And if so, how do you distinguish that? Yeah, the primary case they relied on is the Shea case. I think on its face, Shea says, I'm not applicable to this matter. Shea involved probate succession, not foreclosure. It was expressly limited in the opinion. It says we are only concerned with the devolution of title at death. That's not what we're dealing with here. I think it's also important that, you know, Shea talks about equity being done which ought to be done. In this case, we have a contract that wasn't performed. It's not equitable to give the benefits of a contract to a party that simply doesn't perform that contract. The contract required that the mortgage be paid by the seller or assumed by the buyers at closing, and that didn't happen. So equity cannot reward nonperformance. I also think if we can go back to the Applegate case, it's important that we understand the mechanism in which case the court was able to further review that. In the Applegate case, we had an affidavit that on its face was defective. The statute requires due inquiry. Now, there's no challenge to the affidavit in the underlying foreclosure in this case. But in Applegate, the statutory required language was crossed out and replaced with on information and belief. And so the court, the Applegate court was able to look at that, look at the face of the record and say this was insufficient. I don't have to evaluate the truthfulness of the statement. The affidavit on its face is insufficient. That is significantly different than what Mr. Walker is trying to do here. There's been no challenge to the face of the affidavit. Instead, Mr. Walker has said what they say in the affidavit is untruthful. It's false. They've lied. If that, counsel, kind of goes back to what Justice Barbera's question was and you said a minute ago, and I believe you put it in your brief, if it's a void judgment, then the proper venue would be to file a 1401 action in the underlying foreclosure action to bring these issues to light that the affidavit was incorrect or things such as that, correct? That may be correct, yes. That's Mr. Walker's obligation to undertake that. And until he does so, the order approving sale is a duly entered order of a foreclosure court of the state of Illinois, and that's what we have to follow. And so when we get into the truth of the statements that were presented to that court, this case is not the appropriate place for that. It kind of seems you're saying Mr. Walker's real remedy is to sue Ms. Jackson if he, in fact, complied with the contract, which there's no evidence that he did. But if he has any gripe, it's with Ms. Jackson for not providing him with a deed or following through. His gripe is not with Fannie Mae, who purchased this at a sheriff's sale. I think that that's exactly right, and I think that's what the case law states, that as between the parties to the contract, there may be a transfer of rights. But that doesn't impact third parties. It certainly doesn't impact prior lien holders. So if there is a dispute about whether the contract, who did what or why it wasn't completed, that's between the parties to the contract. And I think this court has actually followed the Jackson case. In 2019, in the opinion of Chase v. Regents, it's an unpublished decision, 2019 Appellate 5th, 160530, throw the position that simply executing a contract for the sale of the property does not transfer title to the property, and quoted the Jackson case in doing so. So it gave a future interest. Contract for the sale of real estate does not transfer title. It is not equivalent to an actual sale. And so again, the rights between those parties are outlined in the contract. The relief between those parties for breach of that contract is between those parties, not between third parties or subsequent purchasers. Well, there's a reason that there's a requirement that things get filed so people are put on notice that they exist. And that did not happen in this case, correct? That's exactly right. To protect the buyer and all third parties, including subsequent purchasers, and to ensure that all parties are aware of what is actually on title and who is going to hold title, the sales contract was supposed to be recorded, and there's no evidence that it ever was. Any further questions? No more questions. Thank you, Anderson. Thank you. There certainly is a distinction between a purely executory contract, which is the vast majority of real estate contracts are signed, where a party signs a contract, you pay earnest money, and then you hold a formal closing, and then at the closing, when you sign the loan documents and pay the money to purchase the property, you get the deed. That's not what was done in this case, which was an installment contract. And again, I think the law is clear under the Shea v. Penrose case where the Illinois Supreme Court said specifically that we believe the correct view to be expressed is the majority of the cases which hold equitable conversion takes place the instant a valid enforceable contract is entered into, and that's what took place in this case. There, in fact, was an initial closing where Mr. Walker paid the initial $32,800 and received the possession of the property. There was going to be a subsequent closing when the balance of the contract was to be paid, but there was a closing in which a case Mr. Walker obtained equitable ownership interest in the property. I think there is no reason that Mr. Walker needs to file a Section 1401 motion to attack the validity of the underlying judgment. Just like in Applegate, there is no need to do so because the Applegate court said the lessee in that case was not properly made a party to the case, just as in this case. Mr. Walker, as a known owner, or even if he was going to be claimed to be an unknown owner, was not properly made a party to the case. And that's exactly what Section 1501 of the Illinois Mortgage Foreclosure Act says. It's quite simply that if you have a permissible party, such as persons having a possessory interest in the real estate, and you don't name them as a party, it doesn't dispose of their rights to the property. And any subsequent sale of property is always going to be subject to the rights of the underlying permissible party that was not named as a party to the case. And that's exactly what happened in this case. And I think Council pointed out that the whole purpose of equity is to do what ought to be done. And I think it is ironic that a federal national is saying that Mr. Cooper knew Mr. Walker was an owner of the property, didn't make him a party to the case intentionally, filed a false affidavit in the case, and that somehow Mr. Walker's fault for not intervening in the case, for not filing a Section 1401 motion to vacate the case when he was deprived of his rights to be a party to the case because Mr. Cooper simply didn't choose to name him as a party. And again, ultimately, why Mr. Cooper didn't name him as a party, that's a question of fact. It could be resolved at some later point. It's not an issue that should be decided on a motion for judgment on the pleadings. But I don't think it's appropriate to basic notions of due process fairness to say, well, your rights were foreclosed, even though we knew you were a party to the case, you knew you were an owner of the property, we chose not to make you a party. The detriment to Mr. Walker to not being added to a party to the case was that he had paid $32,800 down when he signed the contract. He had substantial equity interests in the property. Had he been made a party to the case, he would have been able to participate in the case. At the foreclosure sale, there were excess sale proceeds. He could have made a claim to those sale proceeds. That was all deprived of him by Mr. Cooper. And I don't think they can now say that we knew he was a party or an owner of the property, we chose not to make him a party, but somehow it's his fault for not becoming involved in the case. If the sales contract is not recorded, how does Mr. Cooper know that he's paid $32,000 down or whatever he's paid down? If he was properly made a party to the case, that's a claim he could have asserted in the foreclosure case to present evidence to say that that's what he paid and that he has an equity interest in the property. I don't believe there's any allegations in the complaint or in the affirmative defense to say that Mr. Cooper was notified of the amount of money that was paid as a down payment to Jackson. They obviously knew that he was making monthly payments on the mortgage on the property, but that's a claim he could have asserted in the foreclosure case that he was deprived of because Mr. Cooper chose not to make him a party. Do we know from the record how many payments he made on the property? There's no record. It just says that he subsequently began making the regular monthly payments to Mr. Cooper after that. I assume if all the payments are being made, there's no foreclosure. The bank wants the money. They don't want to have to go through paying attorney's fees and everything else. I assume if he was current, there wouldn't even have been a foreclosure. The circumstances of why they're caused to be a foreclosure, again, I think those are questions of fact that are not properly before the court based on the pleadings on file. There's nothing alleged in the pleadings that Mr. Walker failed to make the payments. I think that's a question of fact that would have to be cited after the conclusion of this case. So for the reasons we've stated, we believe the trial court erred in granting the motion for judgment on the pleadings, and we've asked the court to reverse the trial court's finding. So let me just summarize. With regard to your client's position, based on the fact that the court in Champaign County was making a ruling on the pleadings, the pleadings are taken as true, and it's your position that Mr. Walker pled that he notified Mr. Cooper that he was taking over ownership of the property. So you put him on some sort of notice that he was now an owner of record of some sort. And when Mr. Cooper alleged that there were no other owners other than Ms. Jackson, that was false. That's correct. And, again, if they knew that he was an owner, they could have listed him in the affidavit and still published, because I think Section 2606 of the Code of Civil Procedure says that if there is a known party, you have to put them in the affidavit, and that party is entitled to actual mailing of notice. So he would have been afforded notice of the proceedings, could have intervened at that point to protect his equity interest in the property, the money that he had paid, but, again, they didn't even do that where they said, okay, we know Mr. Walker is an owner of the property. We're still going to publish because he's considered an unknown owner or non-record claimant, and we're not going to provide him with the basic level of due process that he should be entitled to to be able to protect his interest in the foreclosure case. And the affidavit case, despite there being some differences, some said the ruling was that it was improper on the lender's part for failure to notify a party that they, quote, unquote, knew existed, and that's based on any type of notice. Correct. The court never obtained jurisdiction over the West Sea Coin Laundry because the affidavit was deficient because the mortgagee knew that the coin-operated laundry was a tenant of the property. Again, the affidavit in this case is even more unequivocal than the affidavit that was filed in Applegate where it says on information of leave. In this affidavit, they say there's no unknown owners, there's no non-record claimants, but, again, whether or not that's true or not is a question of fact, but at least based on the pleadings on file, it's alleged that that was a false affidavit and that they knew that Walker was an equitable owner of the property. Right. Thank you. Okay. All right. Thank you. Thank you both for your arguments today. We'll take the matter into consideration and issue its ruling in due course. You guys have a good day. Thank you. Thank you.